U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 AUG 27 AM 9: 37

CLERK

BY LAW
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHARLES GORDON, ALICIA GORDON, )
D.J. ENTERPRISES LLC, )
A.C. LAWN MOWING, )
DENIELLE GORDON, individually and )
doing business as DEN & COMPANY, )
)
Plaintiffs, )
)
v. ) Case No. 2:17-cv-00154
)
NEW ENGLAND CENTRAL )
RAILROAD, INC., )
)
Defendant. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ANY OPINIONS ON THE
ALLEGED COST TO REBUILD THE DAMAGED BUILDING AND DENYING
WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE OR TESTIMONY REGARDING THE CONSTRUCTION OF A NEW
BUILDING TO REPLACE THE DAMAGED BUILDING**
(Docs. 98 & 136)

Plaintiffs, Charles, Alicia, and Denielle Gordon (the "Gordons"), D.J. Enterprises LLC, and A.C. Lawn Mowing, (collectively, "Plaintiffs") bring this action against Defendant New England Central Railroad, Inc. ("Defendant"), alleging that Defendant's failure to appropriately maintain track facilities caused a railroad embankment adjacent to the Gordons' land located at 68 Old River Road in Hartford, Vermont (the "Property") to collapse following a July 1, 2017 rain event. Plaintiffs further allege that Defendant's efforts to repair the embankment resulted in a trespass on the Property. The First Amended Complaint ("FAC") asserts the following claims against Defendant: trespass (Count I); negligence (Count II); unlawful mischief in violation of 13 V.S.A. § 3701 (Count III); and unjust enrichment (Count IV).

Plaintiffs seek to recover damages to repair a mixed-use building that was damaged by the railroad embankment failure and which is part of a series of structures on the Property (the "damaged building"). Pending before the court is Defendant's February 5, 2019 motion in limine to exclude any opinions regarding the alleged cost to rebuild the damaged building. (Doc. 98.) Plaintiffs opposed this motion on February 18, 2019 and Defendant replied on March 4, 2019. Following oral argument on May 31, 2019, the court granted Defendant an opportunity to cross-designate portions of its expert's deposition testimony. Defendant filed the cross-designations on June 10, 2019, at which time the court took the motion under advisement.

Also pending before the court is Defendant's July 2, 2019 motion in limine to exclude evidence or testimony regarding the construction of a new building to replace the damaged building. (Doc. 136.) Plaintiffs opposed this motion on July 16, 2019, and Defendant replied on July 18, 2019, at which time the court took the motion under advisement.

Plaintiffs are represented by R. Bradford Fawley, Esq., and Timothy C. Doherty, Jr., Esq. Defendant is represented by Michael B. Flynn, Esq., Matthew M. Cianflone, Esq., and Mark D. Oettinger, Esq.

## I. Factual and Procedural Background.

### A. Jonathan Ashley's Expert Witness Opinion.

Plaintiffs seek to rely on the opinions of their expert witness Jonathan Ashley regarding the cause of the railroad embankment failure and the cost of repairing the damaged building. Mr. Ashley has a Bachelor of Science degree in Environmental Engineering from Rensselaer Polytechnic Institute and is a licensed professional engineer as well as a licensed water system operator. He is presently employed as a Senior Engineer/Project Manager at Dubois & King, an engineering consulting firm. Mr. Ashley estimated that he has worked on over thirty construction projects over the course of his twenty-six years as a consulting engineer. He has produced cost estimates for approximately ten to twenty building construction projects.

2

After being retained by Plaintiffs, Mr. Ashley visited the Property to observe and evaluate the damage caused by the railroad embankment failure. He photographed the damaged building and reviewed records provided by the Gordons regarding the Property. He also reviewed the Town of Hartford's zoning regulations and determined that, because more than 50% of the building had been destroyed and condemned, any repair would require that the entire building comply with current Flood Hazard Area Regulations. Mr. Ashley concluded that rebuilding would require that the entity conducting that rebuild "first remove what remained of the building to its foundation in order to access and remove the debris and then build a retaining wall to hold back the embankment." (Doc. 101-2 at 5, ¶ 11.)

Using a square foot construction estimate methodology,[1] Mr. Ashley's initial estimate of reconstruction costs totaled $1,037,000 with the cost of a retaining wall of $59,000. This estimate was "premised on the continued presence of the debris and rip rap rocks pressing against and in the rear of the Gordons' building[.]" *Id.* at 4, ¶ 10. Mr. Ashley's preliminary estimate was not disclosed in his initial expert witness report because it was an "interim result in the process of developing [his] final estimate." (Doc. 133 at 88.) Plaintiffs have represented that they will not rely on Mr. Ashley's preliminary estimate at trial.

### B. Reliance on Tom Barden's Assembly-Level Cost Estimate.

When estimating construction costs, it is Mr. Ashley's customary practice to obtain an assembly-level cost estimate[2] by subcontracting with another estimator. In this

---

[1] Mr. Ashley explained that "a square foot construction estimate factors in the building use, type of construction (such as framing, roofing, rooms, wall height), and code compliance considerations to estimate a range of costs per square foot of construction." (Doc. 101-2 at 4.)

[2] Mr. Ashley explained the process for developing an assembly-level cost estimate as follows: "we estimate the quantities of building materials or infrastructure, and then we compare those to the databases of available information, which could be RSMeans, private projects, or from an estimator or from our own database; and we multiply—we would form an opinion on what— what projects are most comparable and would apply to this project based on its location and scope and apply those unit costs to the quantities of materials, multiply those and get a . . . total for each type of building material or item being built." (Doc. 133 at 19.)

3

case, Mr. Ashley subcontracted Tom Barden, the owner and operator of Barden Consulting Services, to provide an assembly-level estimate. Mr. Ashley testified that he had worked with Mr. Barden to estimate construction costs for other projects and had found his work to be reliable. When asked about the assistance Mr. Barden provided in estimating the cost of rebuilding the damaged building, Mr. Ashley described that assistance as follows:

> Q. ... [W]hy work with Barden? Why not just do the work yourself?
>
> A. It's typical that the—that with more than one person involved you have a better work product, for one thing. Tom also has a good database of construction costs from building projects throughout Vermont that he's developed over a 20-year period. He—he works with other architects, other engineers around the state and is involved in a lot of—a lot of different projects that give him access to the information on the building construction costs that would be typical to encounter in Vermont.
>
> Q. Well, did you just send him off on his own to do whatever he wanted and then just staple his report to your August 30th report?
>
> A. No.
>
> Q. Tell us what you asked him to do.
>
> A. I asked him to prepare an assembly-level estimate of the building reconstruction costs to match the function and use of what was there prior to construction. I gave him information on the things that needed to be considered in that we had—in that what we had found out from the Town of Hartford and their—their regulations about the flood hazard regulations that would apply, that impacts the costs in terms of the floor level needing to be raised above the—the flood elevation. Those are a few things.
>
> Q. Okay. Other than the direction you gave him, did you actually work with Mr. Barden on this project?
>
> A. Yes.
>
> Q. Physically?
>
> A. Yes.
>
> Q. What did you do with Mr. Barden on this project?
>
> A. We—we visited the site together; we went through the entire building interior together; we talked about the building materials that were there, how the estimate needed to be put together in terms of whether it should be divided up in different spaces or different materials; we took

4

measurements together of different building materials, the heights of doors, the square footage of things; and then we—we also talked with [Charles Gordon] about things we needed to know that we couldn't see, like buried utilities, maybe things that weren't there anymore because of the damage, removal of the garage end of the building.

Q. Were all these things that you and Mr. Barden were doing together things that you could have done on your own?

A. Yes.

Q. Were they things that you had done on other projects on your own?

A. Yes.

Q. And in the way that you worked with Mr. Barden on this project, is that the same way that you had worked with him previously on other projects?

A. Yes. Generally.

(Doc. 133 at 53-55.)

Mr. Barden's assembly-level cost estimate indicated that demolition of the damaged building, removal of debris and soil, and replacement of the building would cost approximately $1,505,516 and constructing a new retaining wall for the railroad embankment would cost approximately $59,000. Mr. Barden submitted this estimate to Mr. Ashley on August 30, 2018. Mr. Ashley testified that he reviewed Mr. Barden's calculations, concluded that Mr. Barden's estimate was reliable, attached Mr. Barden's estimate to his expert report, and submitted it to Plaintiffs' attorney on the same day.

In a deposition on January 3, 2019, the following colloquy took place between Mr. Ashley and Defendant's attorney:

Q. . . . So you did an initial estimate and then you bring in Tom Barden to do another estimate, right?

A. Yes.

Q. So why didn't you just do the final estimate yourself? Are you qualified to do that?

A. Tom was more qualified to prepare this level of detail in the estimate.

Q. So was this really Tom's opinion?

A. You'd have to ask Tom.

5

(Doc. 98-3 at 9.) In the court's May 31, 2019 evidentiary hearing, Mr. Ashley sought to clarify his deposition testimony as follows:

> Q. In your deposition you were asked this question: "Why did you use Mr. Barden?" And you responded, "He is more qualified than me to do an assembly estimate." Do you remember that testimony?
>
> A. Yes.
>
> Q. By saying he was more qualified, did you intend to say you were not qualified?
>
> A. No.
>
> Q. Are you in fact qualified to do an assembly-level estimate?
>
> A. Yes.
>
> Q. And you've done them before, right?
>
> A. Yes.
>
> Q. Did you confirm and take steps to ensure the methodology Mr. Barden was using was consistent with accepted practices used by estimators to do assembly-level estimates?
>
> A. Yes.

(Doc. 133 at 56-57.)

### C. Mr. Ashley's Revised Cost Estimate.

In December 2018, Defendant removed the debris and rip rap rocks from the Property. Based upon this change in circumstances, Mr. Ashley reevaluated his opinion and concluded that it would be cost effective to retain in place that portion of the damaged building which had not been condemned. On January 2, 2019, Mr. Ashley produced an Addendum Report in which he opined that the cost of repairing the damaged building was "between $1,000,000 and $1,300,000." (Doc. 101-2 at 208.) Mr. Ashley formed this opinion by reducing or eliminating certain line-item costs that were included in the August 30, 2018 estimate. Mr. Barden was not involved in producing the amended cost estimate contained in Mr. Ashley's January 2, 2019 Addendum Report.

## II. Conclusions of Law and Analysis.

Defendant's grounds for exclusion of Mr. Ashley's expert witness opinion are threefold. First, Defendant contends that Mr. Ashley is unqualified to offer cost opinions

6

and impermissibly relied upon the opinion of Mr. Barden, adopting it as his own when he allegedly had no role in its creation. Second, Defendant argues that Mr. Ashley cannot be permitted to opine on regulations that impact new construction because he is not qualified as a regulatory expert and is prohibited from instructing the jury regarding the applicable law. And third, Defendant asserts that Mr. Ashley's cost-of-repair opinion is inadmissible because it is not a reasonable measure of damages in this case.

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue an expert may testify thereto." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (emphasis and internal quotation marks omitted). "Proposed testimony must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Id.* at 590. Relevant factors include "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'" *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert*, 509 U.S. at 593-94).

In applying Rule 702, the district court functions as a gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 597) (internal quotation marks omitted). "The consideration has been aptly described . . . as one of 'fit.' 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert*, 509 U.S. at 591 (citation omitted).

### A. Whether Mr. Ashley May Opine Regarding Construction Costs Based on the Barden Estimate.

Defendant argues that Mr. Ashley is not qualified to offer opinions regarding construction costs because he has limited experience in the field of cost estimation and

7

his "experience pertains to environmental / civil engineering projects—not a complicated, structural analysis involving a mixed use commercial and residential building." (Doc. 98 at 7.) Whether a witness is qualified as an expert by his or her knowledge, skill, experience, training, or education is a "threshold question" that the court must resolve before determining whether his or her opinions are admissible. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). Mr. Ashley is a professional engineer who has twenty-six years of experience consulting on environmental and civil engineering projects. He has produced cost estimates for approximately ten to twenty building construction projects and cogently explained the methodologies he relied upon in producing those estimates. His knowledge, experience, and expertise may be helpful to a jury in determining the appropriate amount of damages to award in the event they find Defendant liable. Mr. Ashley is therefore qualified to render an opinion on the subject matter of commercial construction cost estimation. To the extent he has limited experience in estimating costs for mixed-use buildings and his primary expertise is in environmental engineering, those challenges go to the weight of his testimony as opposed to its admissibility. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Defendant further contends that Mr. Ashley cannot be permitted to offer cost estimates that were prepared by Mr. Barden because Mr. Ashley was not qualified to prepare those estimates himself. "An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002); *see also In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017) ("[A]n expert may certainly present the findings and conclusions of those whose work he or she supervised and that he or she could personally replicate if necessary."). In addition, an expert witness may rely on hearsay in forming an expert opinion. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be

8

admitted."); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015) ("One expert is permitted to rely on facts, opinions, and data not of the expert's own making—including analyses performed or findings made by another expert in the case—even if those facts, opinions, and data are otherwise inadmissible."). However, "a proffered expert may not simply pass off as their own, or serve as a vehicle for presenting, the opinions of others in subjects on which the proffered expert is not personally qualified." *In re M/V MSC FLAMINIA*, 2017 WL 3208598, at *22; *see also Dura Auto. Sys. of Ind., Inc.*, 285 F.3d at 613 (observing that the "[a]nalysis becomes more complicated if the assistants aren't merely gofers or data gatherers but exercise professional judgment that is beyond the expert's ken").

At the May 31, 2019 hearing, Mr. Ashley credibly testified that he was qualified to prepare the assembly-level cost estimate that Mr. Barden had prepared and that he had experience preparing similar estimates. After the debris and rip rap rocks were removed from the Property in December 2018, Mr. Ashley modified the assembly-level cost estimate without assistance from Mr. Barden by reducing or eliminating certain line-item costs that were included in the August 30, 2018 estimate. Because Mr. Ashley is qualified to produce assembly-level cost estimates based on his education, skill, training, and experience, and because Mr. Ashley will not be required to "exercise professional judgment that is beyond [his] ken[,]" he is qualified to testify regarding the construction cost to repair the damaged building. *Dura Auto. Sys. of Ind., Inc.*, 285 F.3d at 613; *see also Medisim Ltd. v. BestMed LLC*, 861 F. Supp. 2d 158, 169 (S.D.N.Y. 2012) ("Where a testifying expert has expertise in the field covered by a consulting expert and independently verifies the latter's conclusions, there is no danger that the former is acting as a mere 'mouthpiece or conduit' of the latter."). To the extent Defendant challenges the accuracy of Mr. Ashley's analysis and the basis for his opinions, it may explore any deficiencies on cross-examination. *See Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (quoting *Daubert*, 509 U.S. at 590) ("As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and

active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies[.]") (citation omitted); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999) (observing that provided an expert opinion falls within "the range where experts might reasonably differ," the jury rather than the trial court should "decide among the conflicting views of different experts").

Finally, Defendant argues that "Mr. Ashley should not be permitted to offer either [Mr.] Barden's [e]stimate or his revision as the underlying cost estimate opinion / spreadsheet is inadmissible hearsay." (Doc. 98 at 14) (emphasis omitted). Plaintiffs aver that they do not intend to seek admission of the spreadsheet at trial. (Doc. 101 at 20) ("[T]he Gordons presently have no intention of . . . seek[ing] the admission of [Mr. Barden's] spreadsheet."). The court therefore reserves judgment on whether the spreadsheet itself is admissible in the event it is proffered at trial. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) ("Rule 703 merely permits such hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion. . . . It does not allow the admission of the reports to establish the truth of what they assert."); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1012 (9th Cir. 2008) ("[R]eports of other experts cannot be admitted even as impeachment evidence unless the testifying expert based his opinion on the hearsay in the examined report or testified directly from the report.").

## B. Whether Mr. Ashley May Opine Regarding the Impact of Applicable Law on Construction Costs.

Defendant argues that Mr. Ashley should not be permitted to opine on regulations that impact new construction on the Property because he is not qualified to offer regulatory opinions and because such testimony would constitute an impermissible instruction to the jury regarding the law. Specifically, Defendant challenges Mr. Ashley's opinions regarding construction features that are required by the Americans with Disabilities Act and the Town of Hartford's flood hazard regulations.

Although an expert may not "usurp . . . the role of the trial judge in instructing the jury as to the applicable law[,]" *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (citation omitted), Mr. Ashley's opinion regarding how laws and regulations would impact the cost of rebuilding the structure on the Property is distinguishable from an opinion regarding the law that applies to this case. As Plaintiffs point out, if Mr. Ashley entirely disregarded relevant laws and regulations in planning the reconstruction of the damaged building, he would likely produce an inaccurate estimate of the construction costs. However, "an expert should not be permitted to express an opinion that is merely an interpretation of federal statutes or regulations, as that is the sole province of the Court." *DeGregorio v. Metro-N. R. Co.*, 2006 WL 3462554, at *3 (D. Conn. Nov. 1, 2006). The court therefore GRANTS IN PART and DENIES IN PART Defendant's motion to exclude Mr. Ashley's testimony regarding applicable regulations. Mr. Ashley may testify that, in determining his cost estimate, he considered the need to comply with certain regulations, but he may not opine on what federal, state, or local regulations require in this case.

### C. Whether Plaintiffs are Barred from Presenting Cost-of-Repair Evidence.

Defendant argues that evidence of the cost to repair the damaged building should be excluded because Mr. Ashley's estimate of this cost is over ten times the appraisal value of the building prior to the July 1, 2017 rain event. On this basis, Defendant asserts that "the only measure of damages available to Plaintiffs is the diminution in value of the old building as a result of the damage." (Doc. 136 at 2.) Plaintiffs counter that they are entitled to introduce evidence of the cost of repairs that would be necessary to restore the damaged building to its condition prior to Defendant's alleged negligence.

Under Vermont law, the "standard rule for tort damages is that plaintiffs must prove, by a preponderance of the evidence, the extent and nature of their damages. Plaintiffs must further show that such damages are the direct, necessary, and probable result of defendant's negligent act." *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 45, 198 Vt. 137, 159, 113 A.3d 44, 58 (internal quotation marks omitted).

11

> If the injury is temporary in the sense that restoration can cure the harm, the reasonable cost of repair may serve the need and provide adequate and fair compensation. If the damage is permanent and beyond full repair, the variance in value of the property before and after the injury often affords the better guide to a just award. It all depends upon the character of the property and the nature and extent of the injury.

*Id.* at ¶ 41 (quoting *Bean v. Sears, Roebuck & Co.*, 276 A.2d 613, 616 (1971)). In 2014, the Vermont Supreme Court clarified that "the proportionality of cost-of-repair damages relative to the value of the property prior to a tort injury to property is part of the general inquiry on the reasonableness of damages." *Id.* at ¶ 43. While plaintiffs "always bear the burden of proof as to the reasonableness of damages," the "burden of introducing additional evidence with respect to the proportionality of cost-of-repair evidence more appropriately falls on the party who wishes to challenge the cost-of-repair evidence[.]" *Id.* at ¶¶ 44, 47.

At this juncture, the court cannot determine as a matter of law that Plaintiffs' cost-of-repair evidence is an unreasonable measure of damages. *See Vermont Terminal Corp. v. Crane*, 326 A.2d 158, 160 (1974) ("Where the evidence of damages is conflicting, the amount to be awarded rests in the judgment of the jury, and we will not disturb such a verdict if it may be justified upon any reasonable view of the evidence."). Because it is Defendant's burden under *Langlois* to introduce evidence regarding the proportionality of cost-of-repair evidence, the court reserves judgment regarding whether this evidence will be admissible at trial. *See Langlois*, 2014 VT 130 at ¶ 47, 198 Vt. at 159, 113 A.3d at 59 ("[O]nce plaintiff made a prima facie case, the burden of production was then on the [defendant] to present evidence that cost-of-repair damages in this case were unreasonable, for instance . . . in comparison with the diminution in value of the building before and after the damage occurred.").

## CONCLUSION

For the foregoing reasons, Defendant's motion in limine to exclude any opinions regarding the alleged cost to rebuild the damaged building is GRANTED IN PART and DENIED IN PART. (Doc. 98.) Mr. Ashley may opine regarding construction costs

based on Mr. Barden's estimate. Mr. Ashley may testify regarding the regulations he consulted in determining his cost estimate, but he may not opine on what federal, state, or local regulations require in this case. Defendant's motion in limine to exclude evidence or testimony regarding the construction of a new building to replace the damaged building is DENIED WITHOUT PREJUDICE. (Doc. 136.) The court reserves judgment regarding whether cost-of-repair evidence will be admissible at trial.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 26th day of August, 2019.

Christina Reiss, District Judge
United States District Court