U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 AUG 27 PM 4:31

CLERK

BY ̲̲̲̲̲̲̲̲̲̲̲̲̲̲
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHARLES GORDON, ALICIA GORDON, )
D.J. ENTERPRISES LLC, )
A.C. LAWN MOWING, )
DENIELLE GORDON, individually and )
doing business as DEN & COMPANY, )
　)
Plaintiffs, )
　)
v. ) Case No. 2:17-cv-00154
　)
NEW ENGLAND CENTRAL )
RAILROAD, INC., )
　)
Defendant. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DEFENDANT'S APPRAISER STEPHEN O'TOOLE**
(Doc. 134)

Plaintiffs, Charles, Alicia, and Denielle Gordon (the "Gordons"), D.J. Enterprises LLC, and A.C. Lawn Mowing, (collectively, "Plaintiffs") bring this action against Defendant New England Central Railroad, Inc. ("Defendant"), alleging that Defendant's failure to appropriately maintain track facilities caused a railroad embankment adjacent to the Gordons' land located at 68 Old River Road in Hartford, Vermont (the "Property") to collapse following a July 1, 2017 rain event. Plaintiffs further allege that Defendant's efforts to repair the embankment resulted in a trespass on the Property. The First Amended Complaint ("FAC") asserts the following claims against Defendant: trespass (Count I); negligence (Count II); unlawful mischief in violation of 13 V.S.A. § 3701 (Count III); and unjust enrichment (Count IV).

Pending before the court is Plaintiffs' June 18, 2019 motion to exclude expert testimony of Defendant's appraiser Stephen O'Toole. (Doc. 134.) Defendant opposed

the motion on July 2, 2019 and Plaintiffs replied on July 16, 2019, at which time the court took the pending motion under advisement.

Plaintiffs are represented by R. Bradford Fawley, Esq., and Timothy C. Doherty, Jr., Esq. Defendant is represented by Michael B. Flynn, Esq., Matthew M. Cianflone, Esq., and Mark D. Oettinger, Esq.

I. **Factual and Procedural Background.**

The Gordons purchased the Property in 2009 for $150,000. Three buildings are situated on the Property: (1) a 1,120-square-foot, three-bay garage; (2) a 1,500-square-foot, five-bay garage; and (3) a 6,492-square-foot, mixed-use building. In 2017, tax assessment records indicate that the appraisal value for the Property was $189,600 and the appraisal value of the mixed-use building on the Property was $112,100. Prior to July 1, 2017, the mixed-use building was comprised of garage bays, warehouse storage space, a residential apartment, and commercial space that served as a day-care center and a beauty salon.

The Property is situated directly adjacent to Defendant's mainline railroad tracks. On July 1, 2017, more than four inches of rain fell in a twelve-hour period in Hartford, Vermont. Following the July 1, 2017 rain event, the railroad embankment adjacent to the Property collapsed, causing rocks and debris to enter and damage the mixed-use building on the Property.

Defendant's expert witness, Stephen O'Toole, is the owner of New England Commercial Realty Advisors, Inc. ("NECRA"), a commercial real estate appraisal and consulting firm that provides professional valuation services throughout the United States. Mr. O'Toole has a Bachelor of Arts degree in Business Management from Assumption College and has taken additional business and real estate courses at Worcester Polytechnic Institute, the Boston Architectural Center, and the Appraisal Institute. He has experience providing real estate valuations and appraisals in multiple states, including Vermont.

Defendant contracted Mr. O'Toole to provide an "as is" appraisal of the Property using a "Sales Comparison Approach." Mr. O'Toole describes this approach as follows:

2

"The sales comparison approach produces an estimated value for real estate by analyzing closed sales, listings or pending sales of properties that are similar to the subject property." (Doc. 134-1 at 33.) Defendant further directed Mr. O'Toole to prepare a "Restricted Appraisal Report" for client use only. Mr. O'Toole explains:

> The rationale for . . . the opinions and conclusions set forth in this report may not be understood properly without additional information contained in the appraiser's work file. The contents of the work file include sufficient information indicating adherence to the requirements of Standard 7 of [Uniform Standards of Professional Appraisal Practice], and to be able to produce an Appraisal Report.
>
> Discussions with the client deemed a Restricted Appraisal Report was reasonable considering the following:
>
> - The client is the only intended user of the appraiser's opinions and conclusions;
> - The client understands the limited utility of this option;
> - The client does not need the level of information required in an Appraisal Report.

(Doc. 134-1 at 18.)

Mr. O'Toole selected three comparable properties in or near Hartford, Vermont and determined the price per square foot of gross building area for those properties. Using those comparison values, Mr. O'Toole found that, if the Property were in marketable condition, it would be valued at $45.00 per square foot of gross building area. He then multiplied $45.00 by the square footage of the mixed-use building at 6,492 and opined that this resulted in a total value of $292,140, which he rounded to $290,000. Because the mixed-use building was damaged and was not in marketable condition, Mr. O'Toole deducted "costs to shore and repair the existing building in order to estimate an 'as is' value." (Doc. 134-1 at 44.) Mr. O'Toole obtained an estimate from GZA GeoEnvironmental, Inc. dated November 30, 2018 for "shoring/stabilization; design/permitting, [and] for construction that ranged from $100,000 to $150,000." *Id.* Based on this information, Mr. O'Toole found that "a projected estimate of costs to shore, stabilize, and repair the existing building of $120,000 is reasonable[.]" *Id.* at 45.

3

Mr. O'Toole therefore deducted $120,000 from his estimate of $290,000 to arrive at a final "as is" value of $170,000 for the Property.

At Mr. O'Toole's deposition, Plaintiffs' attorney questioned him regarding his decision to use a 6,492-square-foot measurement to calculate the Property's gross building area:

> Q. ... So, in order to conclude that the undamaged value of the property on November 27th 2018 is $290,000, am I correct that you took 6,492 square feet and multiplied it by $45 a square foot?
>
> A. Correct.
>
> Q. And what does the 6,492 square feet reflect?
>
> A. That's the gross building area of the property, the entire property.
>
> Q. You left out a couple buildings, didn't you, [on] the Gordons' property?
>
> A. No.
>
> Q. You're saying that the total square footage of all three buildings in the Gordons' property is 6,492 square feet?
>
> . . .
>
> [A.] I see what we did here. We even overestimated it. We have 6,492 square feet of gross building area, and what I calculate is 6,340 square feet of finished area. So that would be the 3,720 square feet of finished area for the central building, plus the 1,120 square feet for the three-bay garage and then the 1,500-square-foot five-bay garage, which is 6,340 square feet.
>
> . . .
>
> Q. So what was the mistake that was made?
>
> A. It should have been 6,340 square feet, and that's basically the finished area.
>
> Q. What should have been?
>
> A. On Page 38 where we have 6,492 square feet of [gross building area], that should have said 6,340 square feet finished area.
>
> Q. And you attributed no value to the other two buildings?
>
> A. No, they were included. That's the, that's the 3,720 square feet of the central building. That's the finished area, and then the 1,120-square-foot three-bay garage and the 1,500-square-foot five-bay garage, and you come up with a total of 6,340 square feet.

Q. What comprises the area between, in the central building that is not the 3,720 square feet of finished area? What's the other almost 3,000 square feet comprised of?

A. Again, because it's not included in here, I'd have to look back at the, the file to find out where that number came from.

. . .

Q. Let me ask you this: If you missed almost 3,000 square feet of building in your appraisal, would you agree that that is a substantial error or omission or commission that significantly affects the appraisal?

A. If I missed it—

Q. Yes.

A. —and, if, in the normal course of the appraisal, I should have, yes, it would have, yeah.

Q. And that would invalidate this appraisal, wouldn't it?

A. I don't know if it would invalidate it, but—

Q. It would make it not compliant with the [Uniform Standards of Professional Appraisal Practice], would it? It would not be compliant, correct?

A. If I made a substantial error—

Q. Yes.

A. —and, in the normal course of what the scope of work, it would, yeah.

Q. It would render your data value valuation invalid, right?

A. Yeah.

(Doc. 134-2 at 36-38.)

In his deposition, Mr. O'Toole confirmed that he relied upon interviews with "knowledgeable participants" in arriving at his valuation, but he was unable to identify the individuals that he or his staff interviewed. *Id.* at 23. He explained that this information would be contained in his "work file" which he did not bring to the deposition. He conceded that many "important pieces of data" that were necessary to complete his expert report were only included in his work file, which was not disclosed to Plaintiffs' counsel. *Id.* at 31. He also testified that "the report was prepared for my client. I didn't prepare it for the court or anybody else." *Id.* at 28.

In a July 1, 2019 declaration, Mr. O'Toole clarified that his valuation of the property was based on the 6,492-square-foot area of the mixed-use building; the square foot area of the two garages was excluded from his valuation because they are "outbuildings" which have "minimal value." (Doc. 135-11 at 3.) He explains:

> The square footages for Plaintiffs' property are referenced in multiple places throughout the report and the numbers were consistent throughout.
>
> If Plaintiffs want to argue that the total square footage of all buildings should have been used to calculate the value, my numbers still balance. My value conclusion is $45/SF, which is between the Comparable Properties Nos. 2 and 3 in my report (i.e. between approximately $42/SF and $47/SF). This is also based on square footage of 6,492. If, however, I reconfigured the adjustments based on the size of 9,112 (to include the additional area in the outer buildings), then Comparable Property No. 3 (which totals 3,079 SF) becomes superior, and the subject then lies between Comparable Properties Nos. 1 and 3 or between $27/SF and $42/SF. Because of the size, it should be closer to the low end of the range.
>
> My value of $290,000.00 equates to $32/SF based on the TOTAL building area of 9,112. Doing it this way, as a check on reasonableness, results in the same approximate value to a reasonable degree of real estate appraisal certainty.
>
> In other words, it is my opinion to a reasonable degree of real estate appraisal certainty that my value conclusions would not change by including the additional square footage of the outbuildings, especially not when considering other factors such as the size and location of the Comparable Properties, as well as the general real estate characteristics of the area in Hartford, Vermont where Plaintiffs' property is located.

*Id.* (bullet points omitted).

## II. Conclusions of Law and Analysis.

Plaintiffs seek to exclude Mr. O'Toole's testimony on the grounds that he made a significant calculation error which invalidates his opinion, he purposefully excluded from his report facts and data which he admitted were critical to his opinion, and his opinion is irrelevant and will not assist the jury. Plaintiffs request that the court issue an order instructing Defendant that "it may not mention to the jury in opening statements or otherwise refer to or seek to introduce opinion evidence concerning any values [of the Property] during the trial." (Doc. 134 at 13.)

6

### A. Whether Mr. O'Toole is Qualified as an Expert.

"The proponent of expert testimony always bears the burden to show that his expert is qualified to testify competently regarding the matters he intend[s] to address[.]" *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation marks omitted); *see also In re Pfizer Inc. Secs. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016) ("The proponent of the expert testimony has the burden to establish . . . admissibility requirements[]"). Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In applying Rule 702, the district court functions as a gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (internal quotation marks omitted). Whether a witness is qualified as an expert by his or her knowledge, skill, experience, training, or education is a "threshold question" that the court must resolve before determining whether his or her opinions are admissible. *Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005).

Mr. O'Toole has received training in real estate appraisal, is the owner of a commercial real estate appraisal firm, and has significant experience appraising commercial real property. The court therefore determines that his knowledge, experience, and training qualify him to testify as an expert on the value of commercial real property under Fed. R. Evid. 702.

### B. Whether Mr. O'Toole's Opinion is Relevant.

Plaintiffs contend that any evidence that "Mr. O'Toole has to offer solely and only on the value of the Property after the accident, standing alone, is and will be wholly

7

irrelevant and should be excluded." (Doc. 134 at 12) (emphasis omitted). Although Plaintiffs bear the burden of proof as to the reasonableness of damages, the "burden of introducing additional evidence with respect to the proportionality of cost-of-repair evidence more appropriately falls on the party who wishes to challenge the cost-of-repair evidence[.]" *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 44, 198 Vt. 137, 158, 113 A.3d 44, 58. Defendant may therefore challenge Plaintiffs proffered cost-of-repair damages by "present[ing] evidence that cost-of-repair damages in this case [are] unreasonable, for instance in comparison with the value of the building [prior to the damages], or in comparison with the diminution in value of the building before and after the damage occurred." *Id.* at ¶ 47.

Defendant has indicated that it intends to establish the value of the Property prior to the July 1, 2017 rain event through testimony from Charles Gordon, Alicia Gordon, its expert witness Rodney VanDeusen, Mr. O'Toole, and/or representatives of the Town of Hartford. It further asserts that the value of the Property is "a matter of public record" and attaches to its opposition what appear to be tax assessment records indicating that in 2017 the Property was appraised at $189,600. (Doc. 135 at 1.)

Plaintiffs identify no legal authority under Vermont law for the proposition that fair market value can only be established by an expert witness. Instead, Vermont law provides that "[t]he owner of real or personal property shall be a competent witness to testify as to the value thereof." 12 V.S.A. § 1604. "Although bona fide property sales provide the 'most persuasive method' for appraising residential property at fair market value, that method is not required." *In re Bilmar Team Cleaners*, 2015 VT 10, ¶ 13, 198 Vt. 330, 337, 114 A.3d 483, 489. "When there are too few comparable transactions to provide a reference for determining fair market value, [the Vermont Supreme Court has] upheld the 'use of any or all methods' or combination of methods that result in a rational determination." *Id.* As Defendant points out, "Vermont law requires that property appraisals for tax assessment purposes reflect a property's fair market value." *Murray v. City of Burlington*, 2012 VT 11, ¶ 9, 191 Vt. 597, 599, 44 A.3d 162, 165 (citation omitted). Tax assessment records are thus one of several forms of evidence that

Defendant could proffer to establish the fair market value of the Property prior to the July 1, 2017 rain event. Mr. O'Toole's testimony regarding the value of the Property after the July 1, 2017 rain event is therefore relevant to determining the reasonableness of Plaintiffs' cost-of-repair damages even if he does not also opine as to its pre-event fair market value.

### C. Whether Mr. O'Toole's Opinion is Reliable.

"Once a court has determined that a witness is qualified as an expert, it must next ensure that the expert's testimony . . . rests on a reliable foundation[.]" *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 305 (S.D.N.Y. 2015) (internal quotation marks omitted). In determining the reliability of expert testimony, the district court must engage in "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Relevant factors include "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'" *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert*, 509 U.S. at 593-94). However, "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Restivo v. Hessemann*, 846 F.3d 547, 576 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)) (internal quotation marks omitted).

Mr. O'Toole used a recognized methodology, the Sales Comparison Approach, in offering an appraisal of the building. *See Cayuga Indian Nation of New York v. Pataki*, 83 F. Supp. 2d 318, 323 (N.D.N.Y. 2000) (observing that the "sales comparison approach" is a "recognized appraisal method"). His calculations as well as a description of each of the three comparison properties are explained in his expert report. Plaintiffs nonetheless assert that Mr. O'Toole's testimony is unreliable because he erred by using

9

6,492 square feet to determine the value of the gross building area of the Property, when in fact this square-foot measurement accounted only for the mixed-use building and not the two additional garages situated on the Property. Plaintiffs point out that the combined square footage of these three buildings totals 9,112 and Mr. O'Toole failed to account for 2,620 square feet of gross building area on the Property in his valuation. Plaintiffs therefore assert that Mr. O'Toole's calculation erred by 28.8% and that this constitutes a "substantial error" that renders his opinion invalid. (Doc. 134 at 5.) Defendant counters that Mr. O'Toole's analysis encompassed the entire Property but was "especially focused on the damaged building[]" and that even if he had considered the total gross building area of the Property, this would not have changed his final estimate. (Doc. 135 at 10.)

Although Mr. O'Toole failed to offer any explanation for his decision to use 6,492 square feet as the measurement of the gross building area of the Property in his expert report, in his July 1, 2019 declaration, he avers that he considered the two garages "outbuildings" which have limited value. He proffers that were he to include the square footage of the outbuildings in his analysis, it would trigger a lower value per square foot, but his ultimate opinion would remain substantially the same. Courts have excluded expert witness opinions where the error rate is substantial. *See Daubert*, 509 U.S. at 594 (ruling that in deciding whether to admit expert testimony, "the court ordinarily should consider the known or potential rate of error[]" and concluding that an unacceptable error rate may be grounds for rejecting an opinion). In this case, in light of an inadequate explanation for a significant error, the error rate weighs against the admissibility of Mr. O'Toole's fair market value opinion. Without more, however, the court would be hesitant to exclude Mr. O'Toole's opinion solely because he erred in calculating the Property's relevant square footage. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Washington*, 105 F. Supp. 3d at 306 ("Unless the information or assumptions that plaintiff's expert [ ] relied on were 'so unrealistic and contradictory as to suggest bad

faith,' inaccuracies in the underlying assumptions or facts do not generally render an expert's testimony inadmissible.").

Plaintiffs further contend that Mr. O'Toole should be precluded from testifying because his expert report does not include many of the facts and data he relied upon in arriving at his opinion. Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii) requires an expert witness report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them;" "the facts or data considered by the witness in forming them;" and "any exhibits that will be used to summarize or support them[.]" "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

At Defendant's direction, Mr. O'Toole produced a "Restricted Appraisal Report" that includes only a summarized version of the facts and information upon which he relied. Although he explains his methodology, calculations, and a description of the three properties he used as comparators in reaching his final appraisal value, he does not identify the other sources of information upon which he relied as required by Fed. R. Civ. P. 26(a)(2)(B). The stated purpose of the Restricted Appraisal Report was to inform his client; it was not intended to be relied upon in court. At his deposition, Mr. O'Toole did not produce his work file or otherwise disclose to Plaintiffs all of the facts that underlie his opinion.

Courts have found that restricted appraisal reports which fail to include supporting information and data lack reliability and should not be admitted into evidence. *See, e.g., Omaha Country Club v. Douglas Cty. Bd. of Equalization*, 645 N.W.2d 821, 828 (Neb. 2002) (holding that a restricted-use appraisal report was not credible evidence because the report "could not be fully understood without additional information contained in [the author's] work file"); *Hardy v. United States*, 141 Fed. Cl. 1, 10 (2018) (noting that "restricted appraisal reports, i.e., appraisals in which 'the intended user of the report is restricted to the client only,' are not permitted . . . for 'litigation matters'" under the

guidelines provided in the Uniform Appraisal Standards for Federal Land Acquisitions); *Boltar, L.L.C. v. Comm'r*, 136 T.C. 326, 340 (2011) (excluding an appraisal report under Fed. R. Evid. 702 because it was "not the product of reliable methods and the authors have not applied reliable principles and methods reliably to the facts of the case").

Because Mr. O'Toole's report does not include "a complete statement of all opinions the witness will express and the basis and reasons for them[,]" and because Defendant has not established that this failure was substantially justified or harmless, the report fails to comply with Fed. R. Civ. P. 26(a)(2)(B) and Mr. O'Toole is precluded from offering expert testimony at trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to exclude expert testimony of Defendant's appraiser Stephen O'Toole is GRANTED IN PART and DENIED IN PART. (Doc. 134.) Plaintiffs' motion to preclude Mr. O'Toole from offering expert testimony at trial is GRANTED. Plaintiffs' request that the court order Defendant not to introduce any evidence of the value of the Property is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th day of August, 2019.

Christina Reiss, District Judge
United States District Court

12