U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 AUG 28 AM 11: 31

CLERK
BY  LW
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

CHARLES GORDON, ALICIA GORDON, )
D.J. ENTERPRISES LLC, )
A.C. LAWN MOWING, )
DENIELLE GORDON, individually and )
doing business as DEN & COMPANY, )
)
Plaintiffs, )
)
v. ) Case No. 2:17-cv-00154
)
NEW ENGLAND CENTRAL )
RAILROAD, INC., )
)
Defendant. )

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION IN LIMINE TO PRECLUDE PLAINTIFFS' EXPERT HARVEY H. STONE, P.E.**
(Doc. 86)

Plaintiffs, Charles, Alicia, and Denielle Gordon (the "Gordons"), D.J. Enterprises LLC, and A.C. Lawn Mowing, (collectively, "Plaintiffs") bring this action against Defendant New England Central Railroad, Inc. ("Defendant"), alleging that Defendant's failure to appropriately maintain track facilities caused a railroad embankment adjacent to the Gordons' land located at 68 Old River Road in Hartford, Vermont (the "Property") to collapse following a July 1, 2017 rain event. Plaintiffs further allege that Defendant's efforts to repair the embankment resulted in a trespass on the Property. The First Amended Complaint ("FAC") asserts the following claims against Defendant: trespass (Count I); negligence (Count II); unlawful mischief in violation of 13 V.S.A. § 3701 (Count III); and unjust enrichment (Count IV).

Pending before the court is Defendant's January 14, 2019 motion in limine to preclude Plaintiffs' expert Harvey H. Stone, P.E. (Doc. 86.) On February 27, 2019, Plaintiffs opposed the motion, and Defendant replied on March 13, 2019. Following oral

argument on May 31, 2019, the court granted Defendant an opportunity to cross-designate portions of its expert's deposition testimony. Defendant filed the cross-designations on June 10, 2019, at which time the court took the motion under advisement.

Plaintiffs are represented by R. Bradford Fawley, Esq., and Timothy C. Doherty, Jr., Esq. Defendant is represented by Michael B. Flynn, Esq., Matthew M. Cianflone, Esq., and Mark D. Oettinger, Esq.

## I. Factual and Procedural Background.

Harvey H. Stone is a professional engineer who serves as the Executive Vice President of Stone Consulting, Inc., a consulting firm that specializes in railroad feasibility studies, inspection, and design. He obtained his Professional Engineer's license in 1971 in Pennsylvania and has been practicing civil engineering for more than forty-five years. He is licensed as a professional engineer in Vermont as well as thirty additional states and has twenty years of experience in design, rehabilitation, and construction inspection of railroad tracks. Mr. Stone asserts that he has taken "a number of courses given by the Federal Railroad Administration and American Railway Engineering and Maintenance-of-Way Association (AREMA) in track inspection and FRA Track Safety Standards Part 213 Subpart A to F." (Doc. 86-1 at 4-5.) He has been accepted as a railroad construction and maintenance expert by the Surface Transportation Board and has appeared as an expert witness at trial in two cases within the last four years.

On August 30, 2018, Mr. Stone provided a seven-page expert witness report (the "Expert Report") the stated purpose of which was to "determine the standard of care to which NECR was required to follow with regard to FRA Part 213 track inspections for drainage; whether NECR met or violated that standard of care; and whether any violation of that standard of care was the cause of the embankment collapse." (Doc. 86-1 at 5.) In developing his opinions, Mr. Stone stated that he reviewed the Code of Federal Regulations, Title 49, Track Safety Standards Part 213, the expert report of Jonathan Ashley, P.E., as well as the briefs, deposition transcripts, and judicial opinions in this case. Mr. Stone describes his conclusions as follows:

2

> It is my opinion to a reasonable degree of engineering certainty that the
> New England Central Railroad ignored the finding from the culvert
> inspection team and allowed a drainage structure to remain obstructed.
> Further, given the features of the area concerned, including the steep
> railroad embankment, by having blocked the drop manhole and by
> providing insufficient drainage ditches, NECR failed to maintain the
> drainage facilities to accommodate expected water flow for the area
> concerned. In doing so, they violated Code of Federal Regulations, Title
> 49, Track Safety Standards Part 213, Subpart B §213.33 Drainage. It is
> also my opinion based upon the report prepared by Jonathan D. Ashley, PE,
> that these violations of the standards of care established by Subpart B
> §213.33 were the cause of the collapse of the embankment. It is my
> opinion that if the standards of care had been met, the storm water would
> have been adequately drained from the roadbed and areas immediately
> adjoining the roadbed so that the embankment would not have failed.

*Id.* at 9-10.

On December 4, 2018, Mr. Stone produced a supplemental expert report (the "Supplemental Report"), the stated purpose of which was to "determine what effect the Rail America Track Inspection document provided by NECR in additional discovery submitted after the date on my Expert Report has on my earlier opinions provided in my original Expert Report." (Doc. 86-2 at 4.) In the Supplemental Report, Mr. Stone opines:

> [I]t is my further opinion to a reasonable degree of engineering certainty
> that the Railamerica Track Inspection document established a safety
> standard of care applicable to NECR between 2006 and July 1, 2017 and
> that NECR violated the standard of care in the safety standards and
> procedures set forth in the Railamerica Track Inspection document as
> described above. It is also my opinion based upon the report prepared by
> Jonathan D. Ashley, PE, that these violations of the standards of care were
> the cause of the collapse of the embankment. It is my opinion that if the
> standards of care had been met, the storm water would have been
> adequately drained from the roadbed and areas immediately adjoining the
> roadbed so that the embankment would not have failed.

*Id.* at 6-7.

## II. Conclusions of Law and Analysis.

Defendant argues that Mr. Stone's opinions must be excluded for the following reasons: (1) he improperly usurps the court's role in determining the law and the jury's role in applying the law to the facts; (2) his testimony consists of legal conclusions; (3) he

3

did not use a proper methodology to develop his opinions; (4) he is not qualified to offer regulatory opinions; (5) he invents his own regulatory definition of "expected water flow"; and (6) his opinions are not based on facts in the record. Plaintiffs counter that Mr. Stone's opinions are based on an extensive factual record and that, after assessing the facts, Mr. Stone appropriately relied upon his training and experience to formulate his opinions.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue an expert may testify thereto." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993) (emphasis and internal quotation marks omitted). In determining the reliability of expert testimony, the district court must engage in "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. Relevant factors include "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'" *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Daubert*, 509 U.S. at 593-94). However, "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Restivo v. Hessemann*, 846 F.3d 547, 576 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 644 (2018) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)) (internal quotation marks omitted).

In applying Rule 702, the district court functions as a gatekeeper, ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 597) (internal quotation marks omitted). "The consideration has been aptly described . . . as one of 'fit.' 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes."

4

*Daubert*, 509 U.S. at 591 (citation omitted). The party proffering expert testimony bears the burden of establishing its admissibility "by a preponderance of proof." *Id.* at 592 n.10.

Neither Mr. Stone's Expert Report nor his Supplemental Report contain an adequate explanation of the methodology or reasoning that he relied upon in reaching his conclusions. Instead, he appears to rely almost exclusively on the opinions of Mr. Ashley and the observations of Defendant's employee, Jonathan Allbee. Mr. Stone opines that Defendant breached the applicable standard of care set forth in 49 C.F.R. § 213.33 and the Railamerica Track Inspection document by failing to remove an obstruction from a culvert drain and that this breach caused the railroad embankment to collapse. However, in his reports, Mr. Stone fails to "explain precisely how [he] went about reaching [his] conclusions and point to some objective source . . . to show that [he] ha[s] followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

In determining whether expert testimony will be helpful to the factfinder, the court must also consider whether the testimony will "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) (citation omitted). The Second Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992). "The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994).

Mr. Stone's opinion that 49 C.F.R. § 213.33 sets forth the "standard of care to which the NECR was subject[,]" (Doc. 86-1 at 8), is a legal conclusion that is the province of the court. *See Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 6, 197 Vt. 176, 179, 102 A.3d 1101, 1105 (holding that in a negligence claim, "[t]he existence of a duty is primarily a question of law") (internal quotation marks omitted); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 558 (S.D.N.Y. 2004) (excluding a doctor's

5

expert testimony regarding the legal duties owed to patients because this testimony "communicate[d] a legal standard [that] would encroach on the court's prerogative to instruct on the law"). Similarly, Mr. Stone's opinion that a fifty-year rain event is "not outside the range of 'expected [storm] water flow for the area concerned' as required for adequate drainage pursuant to [49 C.F.R. §] 213.33[,]" (Doc. 86-1 at 9), is inadmissible as it not only offers a legal definition of the applicable federal regulation but appears to offer a meteorological opinion as well. *See Haager v. Chicago Rail Link, LLC*, 232 F.R.D. 289, 294 (N.D. Ill. 2005) (holding that an expert's opinion regarding the applicability and meaning of a provision of the Code of Federal Regulations to a railroad was an inadmissible legal opinion);

To the extent Mr. Stone seeks to opine that Defendant violated 42 C.F.R. § 213.33 by failing to remove a metal plate from a culvert and that Defendant's alleged violation of 42 C.F.R. § 213.33 caused the embankment to collapse, these are ultimate conclusions that are exclusively the province of the jury. "[A]lthough an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991); *see also Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 99, 104 (D. Conn. 2006) (excluding an expert opinion that "does not proffer any specialized knowledge[] and invokes legal standards" because it "attempts to substitute [his] judgment for the jury's") (citation omitted); *Neigum v. BNSF Ry. Co.*, 2008 WL 11378833, at *3 (D.N.D. Apr. 10, 2008) (excluding the expert testimony of a railway safety consultant "as to violations of specific legal standards or legal conclusions, i.e., whether the locomotive was in violation of the 'Locomotive Inspection Act' or Locomotive Safety Standards" because "[a]n expert witness is prohibited from expressing an opinion as to whether the law [or a] safety standard was violated"); *S.E.C. v. U.S. Envtl., Inc.*, 2002 WL 31323832, at *4 (S.D.N.Y. Oct. 16, 2002) ("While the expert can make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts, nor can that testimony track the language of the statute or the law that the defendants are accused of violating.").

6

Even were an ultimate issue opinion admissible, in this case, Mr. Stone has not adequately explained the methodology or reasoning supporting his opinions. Instead, he acts as a mere conduit for Plaintiffs' version of the operative facts. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 283 (D. Vt. 2013) (holding that an expert witness may not "act[] as a conduit for another witness's testimony in the guise of an expert's opinion").

## CONCLUSION

For the foregoing reasons, Defendant's motion in limine to preclude the opinions of Harvey H. Stone as an expert witness for purposes of summary judgment and at trial is GRANTED. (Doc. 86.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28th day of August, 2019.

Christina Reiss, District Judge
United States District Court

7